Parker, J.
This proceeding is brought here to reverse a judgment of the court of common pleas affirming a judgment or order of the probate court, and to obtain a reversal or setting aside of an order of the probate court.
It appears that Carey D. Lindsey made an assignment to Mr. Reed of a large amount of real estate — -a great many pieces,— and that were all more or less incumbered;' I believe that the record shows that all the pieces were incumbered for more' than their value, unless it should turn out that some of the incumbrances are invalid. Mr. Reed, as assignee, under an order of the probate court, proceeded to collect the rents from these properties keeping an account of the same, and subsequently brought *545 .■ some of the properties to sale; and as to all of the properties •covered by the mortgages of Ursula Terhune, the proceeds were so distributed that, after the payment of certain costs ;and expenses, and one prior mortgage on one piece of property, Ursula Terhune received upon her mortgages the remainder ■ of the proceeds, but these proceeds were not sufficient to discharge her claim. A fund of $1495.05 arose from the rentals of the property upon which Ursula Terhune had her mortgage, and under the order the probate court as to the collection of these rentals, though it appears that these proceeds were not ■subject to the mortgage by its terms, the assignee took possession of the property and collected the rents precisely as a receiver appointed by the court at the instance of the mortgagee may have done, and under the arrangement and order, the ■proceeds coming into the hands of the assignee were subject first, to the claim of the mortgagee under the mortgage. 'From this $1,495.05 there was allowed to Mr. Reed the sum of $300 for legal services rendered by him in said proceedings: that is •to say, in proceedings pertaining to the bringing of this mortgaged property to sale, and pertaining to the collection of the rentals before it was brought to sale; and the order of the pro'bate court upon that subject provides that:
“He shall be entitled to deduct and retain said sum from the net amount of said rentals, but shall not be entitled to claim ■or deduct any further sum from said rentals, except upon the order of court for services rendered the general estate of said assignor by said assignee not relating to said proceedings or ■properties should said court determine such deduction proper, which question is reserved for presentation to said court without ■prejudice to the undersigned parties.”
I discover that I have been reading from a stipulation upon the subject signed by the parties or their attorneys, in pursuance -of which an order in accordance with this stipulation was entered.
So that it appears that the assignee has received full compensation for all the services that he has rendered with respect to this property of direct benefit of the mortgagee, Ursula Terhune ; or, in short, for which he would have a right, as against *546 her as mortgagee, to have any compensation from these proceeds.
Subsequently to this, on the motion of Ursula Terhune, the probate court entered an order authorizing, directing and requiring said William H. A. Reed as assignee of Cary D. Rind-say :
“To pay over to said defendant and cross-petitioner, the balance of the rentals collected from the several properties made the subject of this proceeding, and amounting to the sum of $1,195. And said motion was heard upon the evidence,, argued by counsel, and duly submitted to the court; and it appearing to the court, and the court finding that the statements made and representations contained in said application and motion are true, the court, being fully advised in the premises, on consideration, does hereby authorize, order and direct said William H. A. Reed, as assignee of said Cary D. Rindsay, to pay to said defendant and cross-petitioner, Ursula Terhune, out of the balance of said rentals, the sum of $600, and that said assignee hold the balance of said rentals, to-wit: the sum of $595.05, to abide the further order of this court; this order being entered without prejudice to the rights of, and with leave to, said defendant and cross-petitioner, Ursula Terhune, to make further application for the allowance and payment of said balance of said rentals to her; to which decision, ruling and orders of the court each of said parties then and there duly excepted.”
' It is on account of this order that the plaintiff in error now complains, his contention being that the order was entered prematurely; that the court was not authorized to make this order at the time it was made; this contention being based upon the further contention that this fund of $1,195.05 was subject to some extent to the claims of general creditors, to have a share of the fee of the probate court, including the fees and allowances of the assignee for services, that he might render in bringing other property to sale and in winding up the estate— other services paid from this fund; in other words, for services not directly of benefit to the mortgagee as such; services that could not be deemed to be rendeeed for the mortgagee as such, but services rather for the general estate, or pertaining to the general estate and for the general creditors.
*547 It will be observed, therefore, that it devolves upon the plaintiff in error to maintain the affirmative of two propositions : First, that the court may order further fees and allowances of the character and for the services that I have mentioned to be paid from this balance of $1,195.05; second, that the order of partial distribution is premature, because the court could not tell in advance how much it might be proper or neccessary to order paid from such fund.
Should the first proposition be resolved against the plaintiff in error, it is apparent that the second necessarily falls with it; though the decision of the first point in his favor, would leave the second still to be considered. We have chosen to consider the first point, because it lies at the root of the foundation of the whole matter, and ultimately must be met and considered in the court below, and perhaps it may be again presented to this court.
The contention of the defendant in error is, that this fund cannot be, further affected by other allowances that may be made to the assignee or other fees that the probate court may be entitled to. There may be more question with respect to the fees of the probate court than with respect to the allowánces to the assignee; but since the probate judge has voluntarily entered an order which may have the effect of depriving him of fees that otherwise he might collect from this fund, we do not feel that we are authorized or bound to question that order on the account of the probate judge at the instance of any party not shown to be prejudiced by that order. We proceed, therefore, to a consideration of the question as to whether this fund can be depleated or reduced by allowances that may be subsequently made to the assignee for his' services. Section 6351, Revised Statutes, provides in part as follows :
“The probate court shall order the payment of all incumbrances and liens upon any of the property sold, or rights and credits collected, out of the proceeds thereof, according to priority.”
There is a considerable of this section, but that is the part to which I desire to call especial attention. The requirement and direction of the statute is distinct and absolute, that the *548 incumbrances and liens upon the property shall be paid out of the proceeds, according to their priorities.
We do not regard this order complained of as being in the nature of an order for the payment of a dividend at all. There is no declaration of a dividend here. It is an order to pay the proceeds to the mortgagee on account of the lien of the mort■gage. Dividend's are to be made only with respect to funds going to general creditors. The provision as to the declaration of dividends is found in section 6356, Revised Statutes:
“At the expiration of eight months from the appointment and qualification of the assignee or trustee, and as often thereafter as the court may order, an account shall be filed with said court, by such assignee or trustee, and as often thereafter as the court may order, an account shall be filed with said court, by such assignee or trustee, containing a full exhibit oí all his doings as such, up to the time of the filing thereof, * * * which in his opinion may thereafter be collected, to which said accounts exceptions may be filed.”
Further along in the section:
“Whenever, on settlement, the same shall show a balance remaining in the hands of said assignee or trustee, subject to distribution among general creditors, a dividend shall be declared.”
It is not contended here that the general creditors as such would be entitled to participate in a distribution of this fund, or that the court would be authorized to direct the declaration of a dividend from this fund; but it is claimed that the general creditors may reach the fund in part in the indirect way by obtaining payment therefrom of a part of the expenses of the administration of the general estate for the benefit of the general creditors.
The provision with respect to the commissions to assignees, the allowance of counsel fees, etc., is found in section 6357, Revised Statutes. It provides: “Before any dividend is declared, the assignee or trustee may be allowed the following commission upon the amount of the personal .estate collected and accounted for by them.” Dividends are to be. declared from the funds on property to be distributed to the general creditors. The purpose, it seems to us, is very evident to re- ’ *549 quire the payment of these fees and this compensation from the-fund which is to be distributed to the general creditors. The provision is, in effect, that before any' dividend is declared the amount to be distributed is to be ascertained by, first, making these allowances and deductions. This precise question may not have been decided by the supreme court of this state, though we think that certain decisions come very near to deciding it; and we think that the logic of these decisions carried out and applied to a case like this, requires that our decision shall be against the contention of the assignee here; in other words, that the law is (and if it has not been announced distinctly, it has been discussed sufficiently to indicate the view of the supreme court), that the fees and allowances of the assignee for services rendered to the general estate, and for the benefit of the general creditors, are not to be paid from funds or property subject to specific liens which rest upon property at the time the assignment is made. The precise point has been decided in Richter v. Schoenfeldt, 1 W. L. B., 133. I read from the opinion delivered by Judge Cox, being the decision of the-Hamilton county district court.- In the course of the decision, the judge uses this language:
“It was claimed by counsel that they were entitled to be paid' a pro rata, out of the claim of such creditors, whether the creditors’ claim was a prior lien to the fraudulent conveyance or not.
“Such, in the opinion of this court, is not the meaning of the-assignment law. The creditors from whose claim such fee is taken, are the creditors whose rights were intended to be protected in the case. These proceedings in no way benefited the-parties who held mortgages or liens on the property before the fraudulent conveyance, nor did the fraudulent conveyance affect their rights. As to creditors who had no liens, the proceeding did preserve the property, and gave them equality in distribution after the first liens were paid. Tor this benefit the statute permits counsel fees to be paid out of the fund secured, and the court was of opinion that the common pleas did’ not err in their order.”
. Another case is found, Moore v. Feldwisch, 3 W. L. B., 427,. from which I extract this:
*550 “The case now comes up on motion of the assignee to be allowed out of the proceeds of sale, which are insufficient to pay the holder of the liens an amount for his own compensation as assignee, and for the services of his counsel.
“The application does not extend to general services of the assignee and counsel, but to services claimed by them in this case. These services did not consist in anything done by the assignee, for the property was not sold by him but by an officer of court. Nor do they consist in anything ’that could be properly charged as costs. * * * If paid it must be paid out of the fund necessary for payment of the liens. Whether this should be done is not a matter of discretion, but depends upon the estate taken by the assignee under the assignment, as compared with that held by the holders of liens prior to the assignment.
“The estate taken by the assignee was subject to the liens. All there was to assign was what should remain after satisfaction of the liens.
“This action under the statute is simply for the ascertainment of priority, and that the residue of the fund should be rcturned^to the probate court to be distributed under the assignment act. Under the assignment act, before any dividend is declared the costs and expenses of administering the trust are to be paid. But this is a payment to be made out of the general fund; and if the liens and incumbrances are satisfied there would be no general fund. The services for which this claim is made not being such services as can be properly denominated costs, and the application being in effect that counsel fees and compensation to the assignee shall be allowed as costs; and there being no provision in the statute, except that which has reference to the payment out of the general fund, and there being no general fund until the incumbrances have been paid, the court is of the opinion that the application should be refused.”
In the case of Huber Manufacturing Co. v. Sweney, 57 Ohio St., 169, [N. E. Rep., 879], the question was as to the priority of lien of certain chattel mortgages. The assignee was a party to the controversy as It was presented in the supreme court. He was there, as appears from the opinion of the learned judge who announced the decision, somewhat in his own behalf, and more especially as a representative of the general creditors; *551 but the court, finding that however the controversy might be determined as between the contesting lienors the whole fund would be absorbed in satisfaction of the liens, has this to say with respect to the standing in court of the assignee and the general creditors:
“The facts show that either claim will, with the costs, exhaust the entire proceeds of the sale which are in dispute. So that in no aspect of the case are the general creditors interested in the result of the suit, for in no event can any of the proceeds be applied to their claims. Nor is the assignee, although a party here, and although‘the controversy had its origin in his application, interested in the slightest degree in the controversy between the mortgagees.”
Had the court entertained the opinion that an allowance made to the assignee for his services as such, of fees which otherwise must be paid out of funds going to general creditors, might be paid in part from the proceeds of this property, certainly it would not have used this language.-
In the case of Andrews v. Johns, 59 Ohio St., 65, [51 N. E. Rep., 880], a question very closely related to this is discussed at considerable length. In that case the assignee had brought certain mortgaged premises to sale, and it had been bid in by the mortgagee. The sale was confirmed without the mortgagee having paid any money to the assignee on account of the purchase, but the assignee in his accounts made return as if he had received the proceeds of the sale, and proceeded to charge the percentage of the proceeds of sale to which he would be entitled under the -statute against the mortgagee, who was called upon to pay into court the amount that was required to discharge the claim of the assignee for his percentage and some other expenses; and it was held (reading from the syllabus) :
“The term ‘proceeds of real estate sold,’ found in section 6357, Revised Statutes, implies money arising from the sale actually received and accounted for as such by the assignee. Upon money so received he is entitled to the percentage compensation named in the section above cited.
“But, where the land offered for sale by the assignee is bid in by a mortgage creditor whose mortgage is the first lien, and the bid is less than the amount of the debt so secured; taxes and costs, the mortgagee is not. required to pay over to the as *552 signee, nor into court, the amount of such bid, and in such case-the assignee is not entitled to the percentage compensation provided in said section.’'
From the discussion of the case by Judge Spear, it seems-to us very clear that an application of the principles which were-applied there, if applied in this case, would result in a denial' of the claim of the assignee. In other words, if the purchaser in Andrews v. Johns, supra, had actually paid into the hand of the assignee the amount of the purchase price, had he been other than the mortgagee, the assignee might have been entitled-. to some compensation for his services from that fund; he might have been entitled to what would have,been admitted to be reasonable and right for the amount of services which he had' performed for and on behalf of the mortgagee as such; but we think it is clear that the court would not have allowed the-payment to him from that fund of any compensation for other services, viz.: services performed for the general estate or for the general creditors.
I shall not take time to read this discussion, although it is-very interesting. I will read from pages 77 and 78; what appears to us to be a very distinct and satisfactory and reasonable-answer to the contention of counsel for the assignee here that it would be a great hardship, and perhaps an injustice, to theassignee, to require him to settle up an insolvent estate where the whole of the proceeds might go to the lienors and leave-the assignee without compensation. As I have said, we are not required in the case at bar to decide that that would be so or-■should be so. It would be reasonable and perhaps lawful to-allow to the assignee fair compensation for such services as he might perform of benefit to the mortgagee in bringing the property to sale and in bringing the proceeds applicable to the-mortgage debt into court; but it appears that in the case at bar-the assignee has been allowed full compensation for that service, and the only question involved is with respect to his right to have further compensation from this fund for services to be-rendered in winding up the estate, and services for the benefit of the general creditors. I read from page 77:
“Upon the proposition that by the construction of the sections ■ affecting assignments here made, an injustice results to theassignee in that he is denied compensation for labor which he is; *553 required to perform, it would seem sufficient to say, as suggested by counsel, that the hardship is not greater than in the case of a second mortgagee who forecloses his mortgage only to see the first mortgagee take all the proceeds, leaving his expenses to be borne without any results; or the case of an administrator, as in Stone v. Strong, where the first mortgagee is the purchaser. Besides, the assignee is not compelled to perform the services. He accepts the trust voluntarily and with whatevere risk may attend its performance. If he finds it burdensome, unremunerative, he may at any time resign. In response to this the suggestion is offered that the situation in respect to the question of compensation would not be altered by a resignation, for it would then become the duty of the court to appoint a trustee who would be entitled to compensation upon the same basis. Of course such trustee would be entitled to whatever compensation the law gives, as well as an assignee. In the administration of the estates of deceased persons the statute permits, under certain circumstances, that administration be committed to one of the principal creditors, and the practice to so appoint is not uncommon. Possibly practical difficulties might stand in the way of the appointment of a mortgage creditor as trustee of an insolvent estate, but every consideration of fairness would entitle him to a 'potent voice in the selection of such trustee, and in making such choice it would not be difficult, it is here suggested, to find persons abundantly competent who would be satisfied to do the work for the chance presented of obtaining the legitimate compensation allowed by law. Ordinarily the duties involve routine work only, and that which may be performed by persons of fair acquaintance with legal business, and only rarely do they involve work of a difficult order, or calling for the exercise of more than ordinary talent or experience. Presumptively, at least, the provisions of the statute relating to assignments were enacted in the interest of creditors, and it is the duty of all courts to give such construction to the statute, and to direct the administration of the trusts in such maner, as will reasonably secure this end. Complaints are common of objectionable practices in this respect in some localities where, it i's charged, *554 the effort seems to be to conduct assignments- as though they. had been provided, primarily for the benefit of assignees and their attorneys. The faith of the people in the impartial administration of the law by the courts would be enhanced by a correction of the abuse, if it exists, and by the adoption of methods of administration by-which the rights of creditors may be fully protected and enforced, and the trust estates not depleted by extravagant charges and costs; and no injustice to any would result.”
W. H. A. Reed, for Plaintiff in Error.
King & Tracy, for Defendant in Error.
In the case at bar it appears that the assignee has performed extensive services which involved a great deal of labor and skill, and that if he pursues the program that he appears to have marked out in the settlement of the estate, much more labor will devolve upon him, so that there can be no criticism of the assignee upon the ground that he is attempting to magnify his fees, or do that which should not properly be done in the case, or charge exorbitant fees; yet it sieems to us that the rule of law that must obtain in cases of this kind is, that the liens which rest upon property at the time the assignment is made must be respected, and cannot be impaired by anything that may be done in the course of the settlement of the estate; and that if the assignee is not willing to administer the estate and take his chances of other funds arising from the sale of unencumbered property to satisfy his claims for compensation, that he should decline the work — decline to serve. We believe that this is the only safe and just rule, though it is quite apparent that in many cases it may turn out that the assignee may, in the light of the results, be seriously disappointed, and may do a great deal of work for which somebody should compensate him, but for which, in all probability, he will receive no compensation. We think, however, that his compensation should not be at the expense of one who has a specific lien- upon property prior in point of time to the date of the assignment to him.
Holding these views, the judgment of the court of common, pleas will be affirmed.